[No. 4809.]

## The Lincoln Mountain Gold Mining Company v. Williams.

1. **Corporations—Contracts of Employment—Acts of Agent— Ratification.**

Where a superintendent of a mining company employed claimants to examine its mine for the purpose of testifying as to its value, and the offices of the company subsequently ratified such acts, it is immaterial to claimants' right to compensation for such serivces whether or not the superintendent had authority to employ them.—P. 196.

2. **Corporations—Contracts of Employment—Ultra Vires.**

During the pendency of a suit against the managing officers of a mining corporation for sending through the mails fraudulent statements as to the values of its properties, witnesses were employed to testify as experts in order to show that such statements were not false. Held, that claimants for such services were perfectly justified in believing that their employment was within the scope of the powers and duties of such officers and that their services were in the interest of the company, and therefore such employment was not ultra vires.—P. 196.

3. **Corporations—Contracts—Witnesses—Employment to Testify —Pervert or Obstruct Justice.**

Where, during the pendency of a suit against the managing officers of a mining corporation for sending fraudulent statements through the mails as to the values of its property, witnesses were employed to examine the properties and give expert testimony as to its true value. Held, that such contract of employment was not void as tending to pervert or obstruct public justice.—P. 197.

13

4. **Statute of Frauds—Original Promise—Debt of Another.**

A contract, by which certain expert witnesses were to testify in behalf of the managing officers of a mining corporation in an action against them for sending fraudulent statements through the mail in regard to the values of its properties, is a direct promise to pay the stipulated fees and expenses of the corporation and is not a contract to answer for the debt, default or miscarriage of another within our statute of frauds, § 2025, Mills' Ann. Stats.—P. 197.

*Appeal from the District Court of Teller County.*
*Hon. Wm. P. Seeds, Judge.*

Action by James H. Williams against The Lincoln Mountain Gold Mining Company. From a judgment in favor of plaintiff, defendant appeals.

*Affirmed.*

Mr. GEORGE SALISBURY and Messrs. ELWELL & COLLINS, for appellant.

Mr. TULLY SCOTT, for appellee.

Mr. JUSTICE GUNTER delivered the opinion of the court:

The complaint contained five causes of action. The first cause of action was to recover the agreed price for services of plaintiff in testifying in behalf of defendants in a suit pending in the United States court at St. Louis, Missouri, against the officers and agents of defendant company. Also for necessary expenses in connection with said services which defendant had agreed at the time of the employment of plaintiff to pay. The services of plaintiff were in testifying in said suit as to the probable extent in value of mineral deposits in certain mining claims located in the Cripple Creek district in this state. The action is to recover for the balance due for the value of services so rendered, and the expenses so incurred.

The other causes of action are for claims of the same nature assigned to the plaintiff.

We need consider but the defenses to the first cause of action, as the defenses to the other causes of action are the same.

The first defense is a denial. The second defense is intended to present the two questions—that the contract was *ultra vires,* and that it was void as against public policy. The third defense presents the defense of the statute of frauds, that is, that the contract sued was a special promise to answer for the debt of another, and was void because not in writing. —§ 2025, Mills' Ann. Stats.

The case was tried to the court, which found for the plaintiff and entered judgment in accordance with its finding.

1. It is contended that the evidence does not show that defendant company ever made any one of the contracts sued on. This contention is not sustained by the evidence. The gist of the facts is; Defendant company owned mining property in the Cripple Creek mining district, this state; its superintendent of mines, one Wharton, went to all of the claimants, except the one whose account is presented in the fifth cause of action, stated to them that litigation was pending in St. Louis, in reference to the value of the company's property, desired them to examine the properties, prepare themselves to testify as to their value, and further instructed them when notified to go to St. Louis and testify as to such properties in the cause there pending in which the company was interested. The parties so prepared themselves, and by request of defendant's officers, on two occasions went to St. Louis to testify to the matters mentioned. The occasion of going the second time was the failure to try the case at its first setting. On reaching St. Louis, where the general offices of the

company were located, they made headquarters at
such offices, there met the president, vice president,
secretary and other officers of the company, con-
ferred as to their testimony in the case, and under
their direction, and with their knowledge, subse-
quently testified in the case. Further, certain pay-
ments were made to them there by the president of
the company upon the contract made with Wharton,
and even after the institution of this action the com-
pany, through its then president, recognized its lia-
bility upon the contracts.

The point relied upon seems to be that the evi-
dence does not show that Wharton expressly or im-
pliedly, as superintendent of the mines of defendant,
had any authority to employ the claimants. The case
does not rest, however, upon Wharton's express or
implied authority to employ the claimants, because
the evidence clearly shows that it is immaterial
whether Wharton had authority in the first instance
to employ the claimants, because the proper officers
of the company subsequently ratified his acts, and no
question is made but what if they did so the contract
was binding upon the company.

As to the fifth cause of action, the facts pertinent
to it are not within the contention of appellant, be-
cause the employment was by the president of the
company, and the services were rendered under the
supervision and direction of the president.

2.   It is next contended that the contract made
with the claimants was *ultra vires*.

It seems a suit was pending at St. Louis in the
United States circuit court against defendant's of-
ficers for sending through the mails fraudulent state-
ments as to the value of its properties. These wit-
nesses were called for the purpose of showing that
the statements were not false, that the property had
value as represented in the statements. It is rea-

sonable that it was to the interest of the company to show that these statments were true, and that its officers had not been sending out false statments as to the value of its properties. The claimants were perfectly justified in believing that their employment was within the scope of the powers and duties of the managing officers of the defendant company, and that their services were in the interest of appellant company.

3. It is contended that the agreement sued on tended to "pervert or obstruct public justice." Counsel has failed to show us wherein the contract is subject to this objection. This suit was pending at St. Louis; these claimants were residents of Colorado; it was desired to have expert testimony as to the value of defendant company's properties; they were requested to take time, examine the property, have assays made, and be able to testify as to what in truth was the value of defendant company's properties. The witnesses acting on this contract informed themselves, and in other particulars rendered the services contracted for. There is no suggestion in the testimony that they were employed to pervert the truth, or to in any manner obstruct the course of justice. We think there was nothing in this objection.

4. It is said that the contracts were void as in violation of § 2025, *supra,* of our statute of frauds. The facts do not bring the contract within the statute of frauds. The contract was a direct promise to pay the stipulated fees and expenses by the defendant company, and was not a contract in any nature to answer for the debt, default or miscarriage of another person.

The judgment is affirmed.     *Affirmed.*

CHIEF JUSTICE GABBERT and Mr. JUSTICE MAXWELL concurring.